IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FELLOWES, INC., | |
| Plaintiff, | Case No. 10 cv 7587 (consolidated) |
| v. | and |
| ACCO BRANDS CORP., | Case No. 11 cv 8148 (related) |
| Defendant. | Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, Plaintiff's Motion to Amend Complaints (Dkt. No. 146) is granted in part and denied in part.

## I.   BACKGROUND

Plaintiff Fellowes, Inc. ("Fellowes") and Defendant ACCO Brands Corporation ("ACCO") are both Illinois-based office products manufacturers. This case concerns a long-running dispute between the parties over the validity, and possible infringement of, Plaintiff's patents for improved paper shredder technology.

In November 2010, Plaintiff filed the instant suit, *Fellowes, Inc. v. Acco Brands Corp.*, No. 10-cv-07587 ("*Fellowes I*"), alleging that Defendant was infringing four of its patents. Soon after, Plaintiff filed a second infringement action, *Fellowes, Inc. v. ACCO Brands Corp.*, No. 11-cv-04229 ("*Fellowes II*"), asserting that Defendant and two other parties were infringing two more of

Plaintiff's patents. The Court severed Plaintiff's infringement claims against the two non-ACCO parties and sent them to the Northern District of Ohio, where they were eventually resolved. The Court then consolidated the remaining claims against Defendant into *Fellowes I*. In 2011, Plaintiff filed a third suit, *Fellowes, Inc. v. ACCO Brands Corp.*, No. 11-cv-08148 ("*Fellowes III*"), alleging that Defendant was infringing on yet another of Plaintiff's patents. *Fellowes III* has been reassigned to this Court.

Defendant challenged the validity of several of the patents at issue in *Fellows I* and *III* in the U.S. Patent and Trademark Office ("PTO"). The PTO began reexamining several of the patents, and this Court stayed all of *Fellowes I* and *III* pending resolution of the PTO proceedings. On August 8, 2017, while *Fellowes I* and *III* were stayed, the PTO issued Plaintiff U.S. Patent No. 9,724,704 ("the '704 Patent"), concerning another shredder-related invention. The Court received a joint status report from the parties in mid-2018 indicating that the PTO proceedings had concluded.

Plaintiff now moves to file Amended Complaints in *Fellowes I* and *III*, to reflect the outcome of the PTO proceedings and its new '704 Patent. Defendant argues that such amendments should be denied as futile and prejudicial. Neither party has formally moved to

lift the stay; however, the Court now lifts the stay *sua sponte* due to the resolution of the PTO proceedings. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (stating that the power to stay proceedings is incidental to the power inherent in every court to efficiently manage its docket).

The following is a list of the patents at issue in *Fellowes I* and *III*, and, for the patents that underwent PTO proceedings, the outcomes of those proceedings:

### *Fellowes I* (consolidated with *Fellowes II*):

U.S. Patent No. 7,631,822 ("the '822 Patent"): After an *inter partes* reexamination (Control No. 95/001,736), the PTO issued a certificate canceling all original and reissued claims. Plaintiff filed a notice of appeal to the Federal Circuit (No. 2017-001274); by mutual agreement between the parties, the appeal was dismissed.

U.S. Patent No. 6,978,954 ("the '954 Patent"): On January 25, 2015, after an *inter partes* reexamination (Control No. 95/001722), the PTO issued a certificate canceling all claims.

U.S. Patent No. 7,963,468 ("the '468 Patent"): A Patent Examiner rejected Claims 9-12 in an *inter partes* reexamination. The Patent Trial and Appeal Board ("PTAB") reversed that rejection. The Federal Circuit reversed the Patent Examiner's finding and remanded the PTAB's decision. *See ACCO Brands Corp. v. Fellowes, Inc.*, 813 F.3d 1361, 1368 (Fed. Cir. 2016). The PTAB then affirmed the Patent Examiner's rejection of claims 9-12. *Acco Brands Corp. Respondent, Requester v. Owner*, Appeal 2013-010043, 2017 WL 3638350, at *18 (P.T.A.B. Aug. 22, 2017). Plaintiff appealed that PTAB decision to

the Federal Circuit; the Federal Circuit dismissed the appeal at the parties' later request. The PTO has issued a certificate cancelling claims 9-12.

U.S. Patent No. 7,631,823 ("the '823 Patent"): Defendant did not challenge the validity of this patent at the PTO.

U.S. Patent No. 7,226,009 ("the '009 Patent"): Defendant did not challenge the validity of this patent at the PTO.

U.S. Patent No. 7,025,293 ("the '293 Patent"): Defendant did not challenge the validity of this patent at the PTO.

### *Fellowes III*:

U.S. Patent No. 8,020,796 ("the '796 Patent"): After an *ex parte* reexamination (No. 90/013,046), the PTO issued a certificate canceling claims 1, 2, 21, and 22; amending claims 16-18, 20, and 31; adding claims 32-33; and confirming claims 11, 12, and 19.

U.S. Patent No. 8,464,767 ("the '767 Patent"): After an *inter partes* review (No. IPR2013-00566), the PTAB determined that claim 1-2, 4-9, 11-24, and 26-45 are unpatentable; the Federal Circuit affirmed. *ACCO Brands Corp. v. Fellowes, Inc.*, IPR2013-00566, 2015 WL 1009186 (P.T.A.B. Feb. 12, 2015), *aff'd*, *Fellowes, Inc. v. ACCO Brands Corp.*, 642 F. App'x 994 (Fed. Cir. 2016). The PTO issued a certificate canceling claims 1-2, 4-9, 11-24, and 26-45. Claim 3, 10, and 25 remain.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), a court "should freely give leave" to amend the pleadings "when justice so

requires." FED. R. CIV. P. 15(a). Rule 15(a) reflects "a liberal attitude towards the amendment of pleadings." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). However, a court has discretion to deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile. *Id*. The standard for futility is whether the amended pleadings would withstand a Rule 12(b)(6) motion to dismiss. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Accordingly, a proposed amendment must allege enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

### A. First Amended Complaint (*Fellowes I*)

In its proposed First Amended Complaint, Plaintiff seeks to withdraw its allegations under the '822, '954, and '468 Patents, and continue its claims regarding the '823, '009, and '293 Patents. The Court notes that Defendant does not oppose Plaintiff's request to amend the *Fellowes I* Complaint. Furthermore, such amendment is not unduly delayed or futile. *Soltys*, 520 F.3d at 743. Accordingly, Plaintiff may amend its *Fellowes I* pleadings to clarify the remaining patents in that case. The pleadings must clearly state

the patent claims that Plaintiff is asserting Defendant infringed, as explained later in this Opinion.

## B. Second Amended Complaint (*Fellowes III*)

In its proposed Second Amended Complaint, Plaintiff seeks to withdraw allegations related to the '767 Patent, continue alleging infringement under the '796 Patent, and add allegations based on its new '704 Patent. Defendant argues that amending the *Fellowes III* pleadings is futile because the doctrine of issue preclusion bars Plaintiff from asserting the '704 and '706 Patents.

Issue preclusion prohibits "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation omitted). To establish issue preclusion, Defendant must show: (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action. *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). While the Seventh Circuit sets the issue preclusion criteria, Federal Circuit law governs the aspects of issue preclusion that are unique

to patent law. *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013) ([W]hether a particular claim in a patent case is the same as or separate from another claim has special application to patent cases, and we therefore apply our own law to that issue.").

Defendant argues that issue preclusion bars Plaintiff from accusing Defendant of infringing certain claims in the '704 and '796 Patents because those claims are not materially different from claims in the '767 Patent that the PTAB and Federal Circuit have found to be invalid. The Court will assess the '704 and '796 Patents separately. Plaintiff does not dispute that it was fully represented at all the proceedings at issue; consequently, the fourth element of issue preclusion is satisfied for both the '704 and '706 Patents.

## 1. The '704 Patent

### a. Same Issue

The PTO issued the '704 Patent in 2017, and the PTAB has not adjudicated its validity. However, Defendant asserts that many of the '704 Patent's claims (1-3, 6-27, and 29-38) are not materially different from the '767 Patent's claims (1-2, 4-9, 11-24, 26-45) that the PTAB found unpatentable—a decision the Federal Circuit affirmed. *ACCO Brands Corp. v. Fellowes, Inc.*, IPR2013-00566, 2015 WL 1009186 (P.T.A.B. Feb. 12, 2015), *aff'd, Fellowes, Inc. v. ACCO*

*Brands Corp.*, 642 F. App'x 994 (Fed. Cir. 2016). The '704 Patent contains 38 claims, all of which are identical to the '767 Patent's invalidated claims except for two groupings. The first group includes the '704 Patent's claims 4, 5, and 28. Those claims correspond to the '767 Patent's remaining valid claims 3, 10, and 25. Since the '704 Patent's claims 4, 5, and 28 are identical to '767's claims that were not invalidated by the PTAB, the Court finds, and Defendant apparently agrees, that issue preclusion does not bar Plaintiff from asserting the '704 Patent's claims 4, 5, and 28.

The second grouping of claims—1, 16, 26, and 34—requires a deeper analysis. These are the four independent claims of the '704 Patent and are the only claims in the '704 Patent that contain new language to differentiate themselves from the invalidated '767 claims. The Court will refer to the altered language in claims 1, 16, 26, and 34 as the "immediately limitation." The immediately limitation is emphasized in italics below:

> [A] controller coupled to the motor . . . said controller performing a predetermined operation in response to determining that the at least one criterion has been met. (*See* '767 Patent, invalidated claims 1, 15, 23, 28.)

> [A] controller coupled to the motor . . . said controller *being configured to prevent* operation *of the motor in the shredding direction immediately* in response to determining that the at least one criterion has been met

*to prevent the one or more additional articles from jamming the shredder mechanism*. (*See* '704 Patent, claims 1, 16, 26, 34, Ex. 2 to Def.'s Resp., Dkt. No. 147-2 (emphasis added).)

Defendant asserts that a shredder that stops "immediately" after it senses a criterion related to too much paper having been inserted in the machine is not materially different from a shredder that stops after an undefined period of time. The Federal Circuit has held that issue preclusion is not limited to identical patent claims. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). Rather, the "identity of the *issues* that were litigated" determines whether preclusion applies. *Id*. If differences between the unadjudicated and adjudicated patent claims "do not materially alter the question of invalidity," issue preclusion applies. *Id*. Defendant asserts that the immediately limitation merely uses "slightly different language to describe substantially the same invention." *See id*.

Plaintiff argues that the '704 Patent's claims are not materially similar to the invalidated '767 Patent claims, because the PTO issued the '704 Patent even after Plaintiff informed it that the PTAB had invalidated the '767 Patent. (*See* Preliminary Amendment of the '704 Patent, Ex. D to Pl.'s Reply at 13, Dkt. No. 148-1 (wherein Plaintiff noted that the claims of the '704 Patent are "similar to the claims of" the '767 Patent, and explained that

the PTAB found most claims in the '767 Patent to be unpatentable).)
In its Preliminary Amendment to the '704 Patent, Plaintiff
encouraged the PTO to find that the immediately limitation rendered
the '704 Patent's claims patentable despite the PTAB's decision on
the '767 Patent. (*Id.* at 12.) Plaintiff also correctly points out
that the '704 Patent, like all patents, enjoys a statutory
presumption of validity. *See* 35 U.S.C. § 282.

However, the fact that the PTO issued the '704 Patent does
not bar issue preclusion. The Court is not bound by the issuance
of a patent—it must make its own independent determination of
patent validity. *See Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d
1313, 1322 (Fed. Cir. 2005). Indeed, when considering issue
preclusion in the patent context, the Court must compare
unadjudicated patents to adjudicated patents, to determine whether
they are materially similar. *See Ohio Willow Wood*, 735 F.3d at
1342. Thus, Plaintiff's argument that because the PTO issued the
'704 Patent it cannot be materially similar to the '767 Patent,
fails. Plaintiff further fails to explain how the immediately
limitation would change an invalidity analysis. *Id.* at 1343.

A brief recitation of the relevant PTAB proceedings is
necessary to analyze the identity of issues adjudicated at the
PTAB, and those before the Court now. In 2014, at Defendant's
request, the PTO authorized an *inter partes* review of the '767

Patent. On February 12, 2015, the PTAB determined that the '767 Patent's claims 1-2, 4-9, 11-24, and 26-45 are unpatentable under 35 U.S.C. § 103(a). *See Fellowes,* 2015 WL 1009186. Section 103(a) states that only non-obvious subject matter is patentable. 35 U.S.C. § 103(a). The PTAB found that the above-listed '767 claims were unpatentable as obvious over prior art, specifically the "Aries," "Ricoh," and "JP '445" patents. *Id.* at *16. The PTAB found that the '767 Patent's independent claims 1, 15, 23, and 28, were obvious over Aries. *Id.* The Federal Circuit affirmed the PTAB decision. *Fellowes, Inc. v. ACCO Brands Corp.*, 642 F. App'x 994 (Fed. Cir. 2016).

The new language in the '704 Patent's claims 1, 16, 26, and 34 create two "differences" from the invalidated '767 Patent's claims: (1) the motor stops "immediately" in response to a determination that a predetermined maximum thickness threshold has been violated; and (2) the purpose of such stoppage is to prevent the shredder from becoming jammed. The corresponding '767 Patent's claims state that the motor would stop an undefined period of time after determining the maximum thickness threshold has been violated, and do not specify that the purpose of this stoppage is to prevent jamming.

The immediately limitation was not present in the '767 Patent's claims, but complete identity of claims is not required

to satisfy the identity-of-issues requirement for claim preclusion. *Ohio Willow Wood*, 735 F.3d at 1342. The invalidated '767 Patent's claims "require that the controller monitors input from the thickness detector and, upon detecting a violation of a predetermined maximum thickness threshold, the controller determines if the input meets at least one criterion corresponding to insertion of one or more additional articles." *Fellowes*, 2015 WL 1009186, at *8. The new '704 Patent's claims do not meaningfully alter that function. Here, if the immediately limitation was present in the '767 Patent's claims, it would not have changed the PTAB's judgment. And if the differences between the unadjudicated and adjudicated patent claims "do not materially alter the question of invalidity," issue preclusion applies. *Ohio Willow Wood*, 735 F.3d at 1342. The PTAB explicitly held that selecting between an immediate or time-delayed motor shutdown is not a patentable innovation:

> [A]lthough the immediate shutdown of a shredder motor may be beneficial in acting as a protective measure to prevent shredder damage, the triggering of a time delay to account for paper waving or flapping operates as a convenience to alleviate unnecessary motor shutdown. We do not discern that such selection between those two known options is the product of innovation, but is instead simply the exercise of the routine skill of an artisan.

*Fellowes*, 2015 WL 1009186, at *11. Thus, the immediately limitation is insufficient to constitute a material difference.

Nor does the new "purpose" language ("to prevent the one or more additional articles from jamming the shredder. . .") materially differentiate the '704 Patent's claims from the '767 Patent's claims. There are statements throughout the '767 Patent, including in the specification, asserting that the purpose of the invention is to prevent jamming. (*See* '767 Patent, 1:46-48 ("By sensing thickness of the articles being fed, the shredder can be stopped (or not started) before a jam occurs."); 1:65-67 ("It is an aspect of the invention to provide a shredder that does not jam as a result of too many papers. . ."); 6:45-48 ("In an embodiment of the invention, the shredder 10 includes a thickness detector 100 to detect overly thick stacks of documents or other articles that could jam the shredder mechanism 16."); 13:47-50 ("If the controller 200 determines that the jam proof system is turned on, the controller 200 detects the thickness of the article fed into the throat 36 of the shredder 10."), Ex. 1 to Def.'s Resp., Dkt. No. 147-1.) The PTAB considered the '767 Patent's claims in light of the specification, *Fellowes*, 2015 WL 1009186, at *4, and still determined the corresponding claims to be invalid. Thus, including this purpose language in the independent claims of the '704 Patent

does nothing to distinguish it from the invalidated '767 Patent's claims.

The new language in the '704 Patent's claims 1, 16, 26, and 34 does not render those claims materially different from the invalidated '767 Patent's claims 1, 15, 23, and 28 claims. Therefore, the issue that the PTAB adjudicated—the validity of the '767 Patent's claims—is the same issue currently before the Court.

**b. Actually Litigated & Essential to the Final Judgment**

As an initial matter, Plaintiff argues that that the PTAB's judgment cannot preclude an issue before this Court because only a district court's finding that a patent is invalid can create issue preclusion for another patent. Plaintiff misstates the law. The Supreme Court has held that issue preclusion is "not limited to those situations in which the same issue is before two *courts*. Rather, where a single issue is before a court and an administrative agency, preclusion also often applies." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015). In *B & B Hardware*, *Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293 (2015), the Supreme Court considered the preclusive effect of decisions by the Trademark Trial and Appeal Board ("TTAB") and held that "a court should give preclusive effect to TTAB decisions if the ordinary elements of issue preclusion are met." *Id*. at 1299. The Federal Circuit has applied *B & B Hardware* to PTAB

decisions, finding that the TTAB and the PTAB "are indistinguishable for preclusion purposes." *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018). Thus, the Supreme Court and the Federal Circuit have instructed courts to give issue preclusive effect to PTAB decisions if the ordinary elements of issue preclusion are met. *See B & B Hardware*, 135 S. Ct. at 1299.

Plaintiff further argues that the '704 Patent's claims were not "actually litigated" because the PTAB used a different burden of proof when assessing the '767 Patent. The burden of proof in the PTAB proceeding was different from the burden this Court would apply. In *inter partes* review, the challenger (or the PTO) must establish unpatentability "by a preponderance of the evidence"; in district court, a challenger must prove invalidity by "clear and convincing evidence." *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144 (2016). And the PTAB uses the "broadest reasonable interpretation" standard for claim construction, whereas a district court gives claim terms their "ordinary and customary meaning" from the perspective of a person of ordinary skill in the art of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). The Seventh Circuit has held that issue preclusion may be defeated by shifts in the burden of persuasion or by changes in the degree of persuasion required to

prevail. *Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir. 1986).

However, in this case, the differing burdens do not defeat issue preclusion. The Federal Circuit recently held that its affirmance of the PTAB's invalidity findings has an issue preclusive effect on all pending actions in district courts. *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) (reasoning that the patentee, having been afforded the opportunity to exhaust his remedy of appeal, has "had his day in court" and a defendant should not have to continue defending a suit for infringement of an adjudged invalid patent). In so finding, the court rejected the argument articulated in the dissent, that PTAB opinions should not have preclusive effect in district courts because of the different standards of validity, burdens of proof, and standards of appellate review. *See id*. at 1300 (Newman, J., dissenting). Though the Court could end its inquiry here, to also satisfy the remaining elements of issue preclusion as set forth by the Seventh Circuit, the Court notes that the subject of the '704 Patent's claims was essential to the PTAB's final judgment.

The PTAB considered the exact issue of using an immediate or delayed motor shutdown, and found that selection of one or the other is not a patentable innovation, but rather a choice between

two alternatives that are known to a person of ordinary skill in the art:

> The record, thus, demonstrates it was known in the art that thickness thresholds, specifically violation thereof, may provide either of two functions: (1) almost immediate shutdown of a shredder motor; or (2) establishment of a time period, during which motor shutdown may be preempted, but after which shutdown occurs. . . . [A] skilled artisan would have appreciated reasonably that there is trade-off in the selection of responses to violations of thickness thresholds. That is, although the immediate shutdown of a shredder motor may be beneficial in acting as a protective measure to prevent shredder damage, the triggering of a time delay to account for paper waving or flapping operates as a convenience to alleviate unnecessary motor shutdown. *We do not discern that such selection between those two known options is the product of innovation*, but is instead simply the exercise of the routine skill of an artisan.

*Fellowes*, 2015 WL 1009186, at *10-11 (emphasis added). Accordingly, all four prongs of issue preclusion are present.

The remainder of the '704 Patent's claims that Defendant seeks to preclude Plaintiff from asserting (2-3, 6-15, 17-27, 29-33, and 35-38) are all identical to invalidated claims in the '767 Patent, and depend on claims 1, 16, 26, and 34. Because 1, 16, 26, and 34 are barred by issue preclusion, so too are 2-3, 6-15, 17-27, 29-33, and 35-38. Plaintiff is barred from asserting claims 1-3, 6-27, and 29-38 of the '704 Patent.

## 2. The '796 Patent

### a. Same Issue

Defendant argues that issue preclusion bars Plaintiff from asserting claims 19 and 20 of the '796 Patent, as those claims are not materially different from invalidated claims 11 and 12 of the '767 Patent. Indeed, '796 Patent's claims 19 and 20 are identical to invalidated '767 Patent's claims 11 and 12 with one exception: claim 19 uses a "thickness detector" rather than a "variable thickness detector." Below are the relevant claims from the '796 Patent, with the differences from the '767 Patent indicated in strikethrough:

> '796 Claim 19. A shredder according to claim 1, wherein said ~~variable~~ thickness detector includes a contact member in the throat movable by engagement of the at least one article being received in the throat, and a sensor for detecting movement of the contact member.

> '796 Claim 20. A shredder according to claim 19, wherein said sensor is an optical sensor.

Plaintiff does not explain how the presence of a variable thickness detector materially distinguishes claims 19 and 20 from the otherwise identical and invalidated claims 11 and 12 from the '767 Patent. Instead, Plaintiff raises the same argument it did with the '704 Patent—the '796 Patent must be materially different because the PTO issued it knowing that, at the time, the related '767 Patent was being challenged at the PTAB. As explained above, this argument is insufficient to bar issue preclusion.

Furthermore, the PTO issued the '796 Patent's reexamination certificate on September 2, 2014—before the PTAB invalidated the relevant claims in the '767 Patent, in February 2015. ('796 Ex Parte Reexamination Certificate, Ex. 3 to Def.'s Resp., Dkt. No. 147-3.) Thus, the Court cannot give the PTO's decision to issue the '796 Patent much weight. Rather, the Court must look to the actual identity of the issue before the PTAB and this Court.

A thickness detector, described in the '796 Patent's claim 1, "detect[s] a thickness of the at least one article to be shredded being received by the throat." ('796 Patent, 14:42-44, Ex. 3 to Def.'s Resp., Dkt. No. 147-3.). Unsurprisingly, a variable thickness detector "detect[s] and output[s] varying amounts of detected thicknesses." ('796 Patent, 15:2-3.) Plaintiff conceded in the '767 Patent litigation that Aries disclosed a thickness detector, *Fellowes*, 2015 WL 1009186, at *8, and that Ricoh disclosed a variable thickness detector. *Id*. at *12. Both thickness detectors and variable thickness detectors are "known" elements. *Id*. at *10, 12. Thus, the difference in the unadjudicated claim does not materially alter the question of invalidity. *See Ohio Willow Wood*, 735 F.3d at 1342.

The difference between '796 Patent claims 19 and 20 and '767 Patent claims 11 and 12 is not material. Therefore, the PTAB's

adjudication of the patentability of the '767 Patent's claims is the same issue currently before the Court.

### b. **Actually Litigated & Essential to the Final Judgment**

The PTAB found that the '767 Patent's claims 11 and 12 were unpatentable as obvious over the Ricoh and Aires patents. *Fellowes,* 2015 WL 1009186, at *12 ("[T]he combination of Ricoh and Aries discloses all of the elements of claims [11 and 12]."). As the Court has already explained, the Federal Circuit affirmed the PTAB's decision, which the Federal Circuit has indicated is sufficient to create an issue preclusive effect on these claims. *See XY*, 890 F.3d at 1294.

Regardless, for the sake of assessing all the Seventh Circuit's issue preclusion elements, the Court notes that the materially similar '767 Patent claims were actually litigated and essential to the PTAB's judgment. Plaintiff and Defendant litigated the validity of '767 Patent claims 11 and 12 before the PTAB; the PTAB considered the parties' arguments and the record, and held that the claims were obvious:

> ACCO contends that claims 8, 9, 11, 12, 18-20, 31-33, 35-37, 39-41, and 43-45 are unpatentable over Aries and Ricoh. . . . Each of the above-noted dependent claims add features specifying that a thickness detector is a "variable thickness detector," and a particular "sensor" or "optical sensor" is associated with a shredder. ACCO relies on Ricoh as disclosing those added features. . . . Fellowes does not dispute that Ricoh discloses the

features added by each of claims 8, 9, 11, 12, 18-20, 31-33, 35-37, 39-41, and 43-45. Rather, Fellowes contends that "there would have been no objective reasons for one of ordinary skill in the art at the time of Patent Owner's invention to have looked to Ricoh in order to modify the shredder of Aries." . . . We agree with Petitioner that the combination of Ricoh and Aries discloses all of the elements of claims 8, 9, 11, 12, 18-20, 31-33, 35-37, 39-41, and 43-45. We further agree that a skilled artisan would have had reason to make the combination because it would have been nothing more than the combination of known elements, in a known way, to achieve a predictable result.

*Fellowes*, 2015 WL 1009186, at *11-12.

Accordingly, all four prongs of issue preclusion are present for the '796 Patent's claims 19 and 20. Plaintiff is barred from further asserting these claims against Defendant.

### 3. Prejudice

Defendant argues that it will be unduly prejudiced if the Court grants Plaintiff leave to amend. *See Soltys*, 520 F.3d at 743. Defendant first contends that Plaintiff did not inform the Court of the '704 Patent in a timely manner. The PTO issued the '704 Patent to Plaintiff on August 8, 2017; Plaintiff first informed the Court of the that patent on October 23, 2018. However, Defendant does not claim that *it* was uninformed of the '704 Patent until October 2018, only that the Court was. The Court does not find itself prejudiced by the time lapse. This argument fails.

Next, Defendant argues that Plaintiff's proposed amended complaints do not plead sufficient facts to support its infringement allegations with respect to each asserted patent claim. There is disagreement among district courts in the Seventh Circuit as to the level of pleading specificity that *Twombly* and *Iqbal* require in patent cases. *Compare Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15-CV-1067, 2017 WL 1197096, at *5 (N.D. Ill. Mar. 31, 2017) ("*Twombly* and *Iqbal* require plaintiffs to plead sufficient facts supporting their infringement allegations with respect to each asserted patent claim."), *with Orion Energy Sys. Inc. v. Energy Bank Inc.*, No. 16-C-1250, 2017 WL 4773301, at *2 (E.D. Wis. Oct. 23, 2017) (finding that requiring plaintiffs to plead facts supporting infringement allegations for all asserted claims would be contrary to the spirit of the Federal Rules of Civil Procedures).

The Court need not weigh in on this debate. The Court has a general mandate to construe the Federal Rules of Civil Procedure to secure the just, speedy, and inexpensive determination of every action and proceeding. Fed. R. Civ. P. 1. In light of this case's lengthy history, the multiple patents at issue, and the variety of claims within those patents that Plaintiff can no longer pursue, the parties and the Court would be well served by ongoing clarity regarding the remaining patent claims at issue. Thus, Plaintiff's

Amended Complaints must identify which patent claims it is accusing Defendant of infringing. The Court, however, is not requiring Plaintiff to plead facts with respect to each asserted patent claim. Nor is the Court excusing the parties from their parallel obligations under the Local Patent Rules.

## IV.  **CONCLUSION**

For the reasons stated herein, Plaintiff's Motion to Amend Complaints (Dkt. No. 146) is granted in part and denied in part. Plaintiff is barred from accusing Defendant of infringing the following patent claims:

(1)  '704 Patent Claims: 1-3, 6-27, and 29-38; and

(2)  '796 Patent Claims: 19-20.

Plaintiff has leave to file a First Amended Complaint in *Fellowes I* that withdraws allegations related to the '822, '954, and '468 Patents, and continues allegations related to the '823, '009, and '293 Patents. Plaintiff is also granted leave to file a Second Amended Complaint in *Fellowes III* that withdraws the '767 Patent and adds the remaining claims under the '704 Patent that are not barred by issue preclusion: 4, 5, and 28. It is unclear to the Court whether Plaintiff seeks to continue asserting any of the '796 Patent's claims other than 19 and 20, which are now barred. If Plaintiff wishes to assert any of the '796 Patent's remaining claims that are not barred by issue preclusion it may do so. In

both of its amended pleadings, Plaintiff must specify which patent claims it is alleging that Defendant infringed.  Plaintiff shall file the Amended Complaints on or before May 6, 2019.

**IT IS SO ORDERED.**


_____
Harry D. Leinenweber, Judge
United States District Court


Dated: 4/22/2019